THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION |
| v. : | NO. 3:14-cr-00022-TCB-RGV |
| : | |
| THOMAS D. MELVIN, *et al.*, : | |

### ORDER

Before the Court are motions for a bill of particulars, [Docs. 41, 47, 49, & 55],[1] filed by defendants Michael Sean Cain ("Cain"), Joel Jinks ("Jinks"), Thomas D. Melvin ("Melvin"), and C. Roan Berry ("Berry"), collectively referred to as "defendants," which the government opposes, [Doc. 64].[2] For the reasons that follow, defendants' motions for a bill of particulars, [Docs. 41, 47, 49, 55 & 56-3], are **GRANTED** with respect to stating the particulars of the aiding and abetting alleged in paragraphs 1 and 9 of the indictment, but **DENIED** in all other respects.

---

[1] The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

[2] Jinks has also filed a motion to adopt and conform applicable motions filed by his co-defendants, [Doc. 56], including Melvin's motion for a bill of particulars, [Doc. 56-3]. The motion to adopt, [Doc. 56], is **GRANTED**, and the Court will address the merits of the adopted motion for a bill of particulars, [Doc. 56-3], in this Order. The other adopted motions will be addressed in separate Reports and Recommendations.

## I. INTRODUCTION

On December 2, 2014, the grand jury returned an indictment against defendants charging seven counts of securities fraud, in violation of 18 U.S.C. §§ 1348 and 2. [Doc. 1]. According to the indictment, Melvin was a "certified public accountant licensed in Georgia and [a] partner in the accounting firm Melvin, Rooks, & Howell ('MRH') in Griffin, Georgia." [Id. at 2-3 ¶ 2d]. As an accountant, Melvin "regularly received confidential information from clients," and he was prohibited by the Georgia State Board of Accountancy from disclosing confidential information obtained in the course of performing professional services without client consent. [Id. at 3 ¶ 2d]. Defendants Berry, Cain, and Jinks, all of whom lived or worked in Griffin, Georgia, were clients of Melvin.[3] [Id. at 3-4 ¶¶ 2h-2k].

---

[3] The indictment alleges that Berry lived in Griffin, Georgia, and owned a small business and that Melvin served as Berry's accountant for both personal tax services and accounting services for his business. [Doc. 1 at 3-4 ¶ 2i]; but see [Docs. 53 at 1 n.1 & 76 at 7 n.2 (Berry's counsel noting that Berry's business was incorrectly named in the indictment and that Berry actually lived in Jackson, Georgia)]. Berry and Melvin also maintained a close personal friendship. [Doc. 1 at 4 ¶ 2i]. Additionally, defendant Cain lived in Griffin, Georgia, and was senior vice president and securities broker at Morgan Stanley Smith Barney ("Morgan Stanley"), who "traded securities on behalf of clients and on his own behalf." [Id. at 4 ¶ 2j]. Melvin served as Cain's accountant for personal tax services, Cain managed MRH's retirement accounts, and Cain and Melvin referred clients to each other. [Id.]. Defendant Jinks lived in Griffin, Georgia, and owned a small business, and Melvin served as his accountant for both personal tax services and for his business. [Id. at 4 ¶ 2k]. Jinks and Melvin also maintained a close personal friendship. [Id.]. The

Chattem, Inc. ("Chattem"), an "over-the-counter pharmaceutical manufacturer headquartered in Chattanooga, Tennessee," was a "public company whose stock traded on the NASDAQ Stock Market" and whose "securities were registered with the United States Securities and Exchange Commission ('SEC') pursuant to Section 12(b) of the Exchange Act[.]" [Id. at 2 ¶ 2a]. Sanofi-Aventis ("Sanofi"), a French pharmaceutical company that manufactured and marketed prescription and over-the-counter medication, traded American depository shares on the New York Stock Exchange. [Id. at 2 ¶ 2b]. In late 2009, Chattem engaged in discussions with Sanofi regarding Sanofi's potential acquisition of Chattem. [Id. at 2 ¶ 2c]. In November, 2009, Chattem held a series of confidential board of directors meetings in which Sanofi's proposed acquisition of Chattem at a price of above $90 per share was discussed, and eventually, Chattem agreed to proceed with due diligence, but Chattem's directors had an obligation to maintain the confidentiality of the information received in connection with their positions on the board. [Id.].

One of Chattem's board members, who was present during the November, 2009, board meetings discussing Sanofi's proposed acquisition, was a client of defendant Melvin. [Id. at 3 ¶ 2e]. On December 4, 2009, this board member met

---

indictment also refers to Person A, who worked with Melvin at MRH. [Id. at 4 ¶ 2l].

with Melvin for personal tax advice based on the proposed acquisition of Chattem, and he advised Melvin that the information he had just provided him, including the approximate timing of the merger and potential acquisition price, was confidential. [Id. at 3 ¶ 2f]. On this same day, Melvin called Berry, Cain, and Jinks, all within an hour of each other, and following these initial conversations, Berry, Cain, and Jinks each purchased Chattem stock. [Id. at 6 ¶ 7].[4] In addition, on December 7, 2009, Melvin advised Person A that a client had provided him "Inside Information about the potential acquisition of Chattem, including that the merger would occur before the end of 2009 and that Chattem's stock would rise approximately $20-25 per share," and Person A then had his father-in-law purchase Chattem stock for him, or on his behalf. [Id. at 6 ¶ 8].

On December 21, 2009, Sanofi publicly announced that it was acquiring Chattem, and Chattem's stock rose from $69.98 per share at closing on December 20,

---

[4] Specifically, the indictment alleges that Cain, aided and abetted by Melvin, first bought Chattem stock on December 4, 2009, and that he, again aided and abetted by Melvin, purchased additional shares on December 7, December 11, and December 15, 2009. [Doc. 1 at 6-7 ¶ 9]. Additionally, Berry, aided and abetted by Melvin, purchased Chattem stock on December 7, 2009, and Jinks, also aided and abetted by Melvin, purchased Chattem shares on December 11, 2009. [Id.]. These purchases of Chattem stock by Berry, Cain, and Jinks, as well as the purchase of shares on behalf of Person A, form the seven counts of securities fraud alleged in the indictment. [Id. at 6-8 ¶ 9].

2009, to $93.50 per share at closing the next day. [Id. at 3 ¶ 2g]. From December 4, 2009, through December 21, 2009, Melvin exchanged multiple calls with Berry, Cain, and Jinks. [Id. at 6 ¶ 7]. Berry, Cain, Jinks, and Person A sold their Chattem shares soon after the merger was publicly announced on December 21. [Id. at 5-6 ¶ 6].

According to the indictment, from December 4, 2009, through January 14, 2010, defendants Melvin, Berry, Cain, and Jinks, as well as unindicted Person A, "aided and abetted by each other, did knowingly and willfully execute and attempt to execute a scheme and artifice (1) to defraud other persons in connection with stock securities of Chattem, Inc. and (2) to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of stock securities of Chattem . . . ." [Id. at 1 ¶ 1]. With regard to the scheme to defraud, the indictment sets forth that Melvin "misappropriated material, nonpublic information . . . regarding Sanofi's planned acquisition of Chattem in advance of the public merger announcement," in violation of the "duties of trust and confidence that licensed accountants owe to clients under the Georgia State Board of Accountancy Code of Professional Conduct," the "expectations of confidentiality held by his client," and "his client's express request that the Inside Information shared with Melvin remain confidential," and that he disclosed this

information to Berry, Cain, Jinks, and Person A "for his own personal benefit" and "with the understanding that the Inside Information would be used for the purpose of purchasing or selling securities." [Id. at 5 ¶¶ 3-4].

The indictment further sets forth that Berry, Cain, Jinks, and Person A, "aided and abetted" by Melvin, "carried out the scheme and artifice to defraud by misappropriating Inside Information of Chattem's, knowing that it had been disclosed by Melvin . . . so that [they] could execute and cause the execution of securities transactions on the basis of the Inside Information." [Id. at 5 ¶ 5]. Finally, the indictment alleges that Berry, Cain, Jinks, and Person A "in turn executed and caused to execute transactions in Chattem's securities on the basis of the Inside Information provided by [Melvin] for their own benefit through personal online brokerage accounts," and that they "sold their Chattem shares after the merger was publicly announced, thereby earning illegal profits." [Id. at 5-6 ¶ 6].

## II. DISCUSSION

Defendants have filed separate motions for a bill of particulars, see [Docs. 41, 47, 49, & 55], to which the government has filed a consolidated response in opposition, [Doc. 64], and defendants Berry and Melvin have replied, [Doc. 77 & 85]. In their motions, defendants request particulars with regard to paragraphs 1 and 9

of the indictment, including how they aided and abetted each other or Person A and how Melvin aided and abetted each of them in their purchase of Chattem stock; how they acted "knowingly" or "willfully" under 18 U.S.C. § 1348; the identity of Person A; the identifies of the "other persons" who were defrauded; what "money and property" they obtained in connection with the purchase and sale of Chattem stock; and what false and fraudulent pretenses, representations, or promises were made in connection with the purchase and subsequent sale of Chattem stock and who made them. See [Doc. 41 at 1-2; Doc. 47 at 3-5; Doc. 49 at 8-10; Doc. 55 at 4; Doc. 85 at 6-7]. Jinks also seeks information regarding the specific dates and times, as well as the content, of his calls with Melvin from December 4 through December 21, 2009; how he executed and caused to execute transactions in Chattem's securities; when he sold his Chattem shares; and what his illegal profits were. [Doc. 47 at 4-5]. Likewise, Melvin seeks the specific content, including the precise dates and times, of the nonpublic information the Chattem board member provided him; the specific content, including dates and times, of the nonpublic information that was told to each co-defendant; how he became aware that the other co-defendants and/or Person A would use the alleged inside information for the purpose of purchasing or selling Chattem stock; how his communication with Person A, as part of their

7

working relationship, constituted a fraud and/or a breach of any fiduciary duty; how he knew that the Chattem board member personally benefited from the disclosure of inside information; and facts indicating that Melvin had knowledge of section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5. [Doc. 49 at 7-10]. Additionally, Melvin and Berry request particulars concerning the benefit Melvin received by providing inside information to Berry, Cain, Jinks, and/or Person A. [Id. at 8; Doc. 55 at 4].

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the Court "may direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f). "The purpose of a true bill of particulars is threefold: 'to inform the defendant[s] of the charge against [them] with sufficient precision to allow [them] to prepare [their] defense, to minimize surprise at trial, and to enable [them] to plead double jeopardy in the event of a later prosecution for the same offense.'" United States v. Reddy, Criminal Action File No. 1:09-CR-0483-ODE/AJB, 2010 WL 3210842, at *5 (N.D. Ga. Apr. 5, 2010), adopted as modified by 2010 WL 3211029, at *1 (N.D. Ga. Aug. 11, 2010) (quoting United States v. Cole, 755 F.2d 748, 760 (11th Cir. 1985)); see also United States v. Colson, 662 F.2d 1389, 1391 (11th Cir. 1981); United States v. Zellner, Criminal Indictment No. 1:09-CR-320-TCB-GGB, 2011 WL 530718, at *9 (N.D. Ga.

Jan. 14, 2011), adopted by United States v. Chester, Criminal Action File No. 1:09-cr-320-TCB-GGB, 2011 WL 529952, at *1 (N.D. Ga. Feb. 4, 2011). Generalized discovery is not a valid reason for seeking a bill of particulars, Colson, 662 F.2d at 1391; United States v. Davis, 582 F.2d 947, 951 (5th Cir. 1978),[5] and "[a] bill of particulars may not be used for the purpose of obtaining detailed disclosure of the government's case or evidence in advance of trial," Zellner, 2011 WL 530718, at *9 (citation omitted). That is, the "crucial question is whether the information sought is necessary, not whether it is helpful." United States v. Calhelha, 456 F. Supp. 2d 350, 365 (D. Conn. 2006) (citations and internal marks omitted). Moreover, a defendant is not entitled to a bill of particulars describing information which is already evident from other sources, such as elsewhere in the indictment or in discovery. United States v. Rosenthal, 793 F.2d 1214, 1227 (11th Cir. 1986), modified on other grounds by 801 F.2d 378 (11th Cir. 1986); see also Reddy, 2010 WL 3210842, at *5.

Here, the indictment specifically describes the fraudulent scheme and specifies each defendant's alleged role in the scheme, as well as the details of the

---

[5] Decisions of the Fifth Circuit rendered before October 1, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

timing of the alleged acts and disclosure of inside information at issue. See generally [Doc. 1]. Indeed, the indictment identifies with particularity the misappropriated information used in the scheme; describes how and approximately when each defendant became aware of the nonpublic information, including the date Melvin provided Person A with the information, and executed the scheme by purchasing and selling Chattem stock; and alleges that defendants acted for their own benefit by earning illegal profits. [Id.].

Paragraphs 1 and 9 of the indictment allege that the defendants were "aided and abetted by each other[.]" [Id. at 1 ¶ 1, 7 ¶ 9].[6] Paragraph 5 of the indictment specifies that Berry, Cain, Jinks, and Person A, aided and abetted by Melvin, carried out the scheme and artifice to defraud charged in the indictment. [Id. at 5 ¶ 5]. In its consolidated response to the motions for a bill of particulars, the government asserts that "Melvin, who did not himself trade in Chattem, aided and abetted Cain, Berry, Jinks, and Person A by misappropriating and disclosing the information regarding Chattem's impending acquisition and disclosing it to them for the purpose of stock trading." [Doc. 64 at 22-23 (citation omitted)]. The government

---

[6] In fact, paragraph 9 alleges that the defendants identified in Column B of that paragraph were "aided and abetted by each other and others[.]" [Doc. 1 at 7 ¶ 9].

goes on to state that "[t]o the extent that the aiding and abetting language in Paragraphs 1 and 9 of the Indictment can be read to suggest a broader theory, the Government has already explained to defense counsel for Melvin, Berry, and Cain that it does not contend that the tippee defendants aided and abetted each other in some fashion." [Id. at 23]. The government contends that no further response should be required, [id.], but the Court disagrees, and based on the government's representations regarding the scope of the aiding and abetting allegations of the indictment, hereby **ORDERS** the government to file and serve within 21 days of the entry of this Order, a bill of particulars detailing the aiding and abetting allegations in paragraphs 1 and 9 of the indictment, including the identity of each person known to the government who is alleged to have aided and abetted each of the defendants identified in Column B of paragraph 9. See United States v. Scrushy, No. CR-03-BE-530-S, 2004 WL 483264, at *9 (N.D. Ala. Mar. 3, 2004).

With respect to defendants' remaining requests, the Court finds that the information sought is beyond the proper scope of a bill of particulars. See United States v. Sherriff, 546 F.2d 604, 606 (5th Cir. 1977) (citations omitted) ("The purpose [of a bill of particulars] is not to provide detailed disclosure before trial of the Government's evidence."); United States v. Esteves, 886 F. Supp. 645, 646 (N.D. Ill.

11

1995) (evidentiary detail sought by defendant beyond proper scope of bill of particulars); United States v. Henry, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994) (citations omitted) (requests to know the "whens," "wheres," and "with whoms" of acts alleged are routinely denied); United States v. Lobue, 751 F. Supp. 748, 756 (N.D. Ill. 1990) ("Requests for . . . evidentiary details as to when and where conversations took place are not within the scope of a bill of particulars."); United States v. White, 50 F.R.D. 70, 71-72 (N.D. Ga. 1970). Defendants have failed to specify how the additional details they seek in these requests are necessary to enable them to prepare their defense, avoid surprise, or plead double jeopardy in a subsequent proceeding. See United States v. Gorel, 622 F.2d 100, 104 (5th Cir. 1979). Indeed, the government has provided a detailed response to the remaining particulars requested by the defendants, see [Doc. 64 at 12-22], and the Court agrees that what defendants are "seeking is generalized discovery that is not a proper purpose of a bill of particulars," United States v. Baitcher, Criminal Action File No. 1:11–CR–536–SCJ–AJB, 2013 WL 1501462, at *2 (N.D. Ga. Mar. 22, 2013) (citation omitted).

"[T]here is a difference between being surprised by the charge and being surprised by the evidence supporting a charge," and the "function of the bill of

particulars is to reduce surprise at the charge, that is, to enable the defendant[s] to identify what [they are] alleged to have done in violation of law." United States v. Slawson, Criminal Case No. 1:14–CR–00186–RWS–JFK, 2014 WL 5804191, at *13 (N.D. Ga. Nov. 7, 2014) (first alteration in original) (emphasis, citation, and internal marks omitted).  And, "[i]t is not to eliminate surprise with respect to evidence offered in support of a charge that is clearly understood by the defendant[s]." Id. (citation and internal marks omitted).  With regard to defendants' requests "for the precise material, non-public information allegedly provided to [them or to Person A] with respect to [Chattem's] stock or otherwise to be relied on by the [g]overnment at trial and for the trades made based on the inside information," defendants' requests "seek evidentiary detail– in light of the information already set forth in the indictment– that is [simply] not appropriate in a bill of particulars." Id. (citations and internal marks omitted).

Moreover, as the government points out, the discovery provided thus far includes phone and trading records that further detail the communications and stock trades alleged in the indictment, as well as summaries of witness interviews and depositions taken by the Securities and Exchange Commission, including the deposition of the Chattem board member referenced in the indictment, see [Doc.64

at 10-11], and a "defendant is not entitled to a bill of particulars with respect to information which is already available through other sources," Baitcher, 2013 WL 1501462, at *2 (citations and internal marks omitted); see also United States v. Kelly, No. 1:13–cr–108–WSD–JSA, 2014 WL 1153375, at *15 (N.D. Ga. Mar. 21, 2014). In the detailed indictment and discovery materials produced to the defendants there is "sufficient information regarding the trading activity that was part of the scheme to commit securities fraud," and "courts considering whether to order a bill of particulars in insider trading cases stop short of compelling the [g]overnment to provide the specifics of each trade to be relied on at trial[.]" Slawson, 2014 WL 5804191, at *14 (citations omitted). Furthermore, to the extent defendants seek additional information concerning Person A, the government states that it has already complied with its "disclosure obligations under Rule 16, Brady, Giglio, and Jencks," and that it "will supplement its disclosures as necessary and as required by its discovery obligations." [Doc. 64 at 23]. In short, the Court is persuaded by the government's consolidated response regarding the remaining particulars requested by the defendants, see [Doc. 64 at 12-22], that based on the allegations contained in the indictment and the information already provided in discovery, many of the

particulars sought by the defendants are already available to them and the remaining requests are beyond the proper scope of a bill of particulars.

### III. CONCLUSION

For the foregoing reasons, Jinks' motion to adopt, [Doc. 56], is **GRANTED**, and defendants' motions for a bill of particulars, [Docs. 41, 47, 49, 55 & 56-3], are **GRANTED** with respect to stating the particulars of the aiding and abetting alleged in paragraphs 1 and 9 of the indictment, but **DENIED** in all other respects. Accordingly, the government shall file and serve within 21 days of the entry of this Order a bill of particulars detailing the aiding and abetting allegations in paragraphs 1 and 9 of the indictment, including the identity of each person known to the government who is alleged to have aided and abetted each of the defendants identified in Column B of paragraph 9.

**IT IS SO ORDERED**, this 7th day of April, 2015.

*Russell G. Vineyard*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE