## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | NO. 3:14-cr-00022-TCB-RGV |
| | : | |
| MICHAEL S. CAIN, *et al.*, | : | |

## MAGISTRATE JUDGE'S NON-FINAL REPORT AND RECOMMENDATION

Before the Court are motions to sever, [Docs. 40 & 53],[1] and motions to strike surplusage, [Docs. 42 & 54], filed by defendants Michael Sean Cain ("Cain") and C. Roan Berry ("Berry"),[2] collectively referred to as "defendants," which the government opposes, [Docs. 63 & 65]. For the reasons that follow, it is **RECOMMENDED** that the motions to sever, [Docs. 40 & 53], and the motions to strike surplusage, [Docs. 42, 54, & 56-1], be **DENIED**.[3]

---

[1] The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

[2] Co-defendant Joel C. Jinks ("Jinks") has filed a motion to adopt and conform Cain's motion to strike surplusage, [Docs. 56 & 56-1]. The motion to adopt, [Doc. 56], as been granted in a separate Order, and the merits of the adopted and conformed motion, [Doc. 56-1], will be addressed in this Report and Recommendation.

[3] Cain has also filed a motion for a speedy trial, [Doc. 43], and a motion for expedited trial date, [Doc. 88], which are hereby **DEFERRED** to the district judge since these motions pertain to the setting of the trial. Moreover, Cain and Berry, along with other co-defendants, have filed motions for a bill of particulars, [Docs. 41, 47, 49, 55 & 56], which has been addressed in a separate Order, and the

## I.  INTRODUCTION

On December 2, 2014, the grand jury returned an indictment against Berry, Cain, and co-defendants, Jinks and Thomas D. Melvin ("Melvin") charging seven counts of securities fraud, in violation of 18 U.S.C. §§ 1348 and 2.  [Doc. 1]. According to the indictment, Melvin was a "certified public accountant licensed in Georgia and [a] partner in the accounting firm Melvin, Rooks, & Howell ('MRH') in Griffin, Georgia."  [Id. at 2-3 ¶ 2d].  As an accountant, Melvin "regularly received confidential information from clients," and he was prohibited by the Georgia State Board of Accountancy from disclosing confidential information obtained in the course of performing professional services without client consent.  [Id. at 3 ¶ 2d]. Defendants Berry, Cain, and Jinks, all of whom lived or worked in Griffin, Georgia, were clients of Melvin.[4]  [Id. at 3-4 ¶¶ 2h-2k].

_____

remaining pending motions will be addressed in a separate Report and Recommendation.

[4] The indictment alleges that Berry lived in Griffin, Georgia, and owned a small business and that Melvin served as Berry's accountant for both personal tax services and accounting services for his business.  [Doc. 1 at 3-4 ¶ 2i]; but see [Docs. 53 at 1 n.1 & 76 at 7 n.2 (Berry's counsel noting that Berry's business was incorrectly named in the indictment and that Berry actually lived in Jackson, Georgia)].  Berry and Melvin also maintained a close personal friendship.  [Doc. 1 at 4 ¶ 2i]. Additionally, defendant Cain lived in Griffin, Georgia, and was senior vice president and securities broker at Morgan Stanley Smith Barney ("Morgan Stanley"), who "traded securities on behalf of clients and on his own behalf."  [Id. at 4 ¶ 2j]. Melvin served as Cain's accountant for personal tax services, Cain managed MRH's retirement accounts, and Cain and Melvin referred clients to each other.  [Id.].

2

Chattem, Inc. ("Chattem"), an "over-the-counter pharmaceutical manufacturer headquartered in Chattanooga, Tennessee," was a "public company whose stock traded on the NASDAQ Stock Market" and whose "securities were registered with the United States Securities and Exchange Commission ('SEC') pursuant to Section 12(b) of the Exchange Act[.]" [Id. at 2 ¶ 2a]. Sanofi-Aventis ("Sanofi"), a French pharmaceutical company that manufactured and marketed prescription and over-the-counter medication, traded American depository shares on the New York Stock Exchange. [Id. at 2 ¶ 2b]. In late 2009, Chattem engaged in discussions with Sanofi regarding Sanofi's potential acquisition of Chattem. [Id. at 2 ¶ 2c]. In November, 2009, Chattem held a series of confidential board of directors meetings in which Sanofi's proposed acquisition of Chattem at a price of above $90 per share was discussed, and eventually, Chattem agreed to proceed with due diligence, but Chattem's directors had an obligation to maintain the confidentiality of the information received in connection with their positions on the board. [Id.].

One of Chattem's board members, who was present during the November, 2009, board meetings discussing Sanofi's proposed acquisition, was a client of defendant Melvin. [Id. at 3 ¶ 2e]. On December 4, 2009, this board member met

_____

Defendant Jinks lived in Griffin, Georgia, and owned a small business, and Melvin served as his accountant for both personal tax services and for his business. [Id. at 4 ¶ 2k]. Jinks and Melvin also maintained a close personal friendship. [Id.]. The indictment also refers to Person A, who worked with Melvin at MRH. [Id. at 4 ¶ 2l].

with Melvin for personal tax advice based on the proposed acquisition of Chattem, and he advised Melvin that the information he had just provided him, including the approximate timing of the merger and potential acquisition price, was confidential. [Id. at 3 ¶ 2f]. On this same day, Melvin called Berry, Cain, and Jinks, all within an hour of each other, and following these initial conversations, Berry, Cain, and Jinks each purchased Chattem stock. [Id. at 6 ¶ 7].[5] In addition, on December 7, 2009, Melvin advised Person A that a client had provided him "Inside Information about the potential acquisition of Chattem, including that the merger would occur before the end of 2009 and that Chattem's stock would rise approximately $20-25 per share," and Person A then had his father-in-law purchase Chattem stock for him, or on his behalf. [Id. at 6 ¶ 8].

On December 21, 2009, Sanofi publicly announced that it was acquiring Chattem, and Chattem's stock rose from $69.98 per share at closing on December 20, 2009, to $93.50 per share at closing the next day. [Id. at 3 ¶ 2g]. From December 4,

_____

[5] Specifically, the indictment alleges that Cain, aided and abetted by Melvin, first bought Chattem stock on December 4, 2009, and that he, again aided and abetted by Melvin, purchased additional shares on December 7, December 11, and December 15, 2009. [Doc. 1 at 6-7 ¶ 9]. Additionally, Berry, aided and abetted by Melvin, purchased Chattem stock on December 7, 2009, and Jinks, also aided and abetted by Melvin, purchased Chattem shares on December 11, 2009. [Id.]. These purchases of Chattem stock by Berry, Cain, and Jinks, as well as the purchase of shares on behalf of Person A, form the seven counts of securities fraud alleged in the indictment. [Id. at 6-8 ¶ 9].

2009, through December 21, 2009, Melvin exchanged multiple calls with Berry, Cain, and Jinks.  [Id. at 6 ¶ 7).  Berry, Cain, Jinks, and Person A sold their Chattem shares soon after the merger was publicly announced on December 21.  [Id. at 5-6 ¶ 6].

According to the indictment, from December 4, 2009, through January 14, 2010, defendants Melvin, Berry, Cain, and Jinks, as well as unindicted Person A, "aided and abetted by each other, did knowingly and willfully execute and attempt to execute a scheme and artifice (1) to defraud other persons in connection with stock securities of Chattem, Inc. and (2) to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of stock securities of Chattem . . . ."  [Id. at 1 ¶ 1].[6]  With regard to the scheme to defraud, the indictment sets forth that Melvin

---

[6] Cain correctly points out, see [Doc. 81 at 4], that in its consolidated response to the defendants' motions for a bill of particulars, the government has explained that "[t]o the extent that the aiding and abetting language in Paragraphs 1 and 9 of the Indictment can be read to suggest a broader theory, the [g]overnment has already explained to defense counsel for Melvin, Berry, and Cain[] that it does not contend that the tippee defendants aided and abetted each other in some fashion," [Doc. 64 at 23].  While the Court "looks only to the face of the indictment to determine whether joinder was proper," United States v. Souffrant, 517 F. App'x 803, 811-12 (11th Cir. 2013) (per curiam) (unpublished) (citation and internal marks omitted), it has issued a separate Order requiring the government to file a bill of particulars with respect to the aiding and abetting allegations in paragraphs 1 and 9 of the indictment, and for purposes of considering this motion to sever, the Court has accepted the government's representation in its consolidated response to the defendants' motions for a bill of particulars regarding the scope of the aiding and abetting allegations.

"misappropriated material, nonpublic information . . . regarding Sanofi's planned acquisition of Chattem in advance of the public merger announcement," in violation of the "duties of trust and confidence that licensed accountants owe to clients under the Georgia State Board of Accountancy Code of Professional Conduct," the "expectations of confidentiality held by his client," and "his client's express request that the Inside Information shared with Melvin remain confidential," and that he disclosed this information to Berry, Cain, Jinks, and Person A "for his own personal benefit" and "with the understanding that the Inside Information would be used for the purpose of purchasing or selling securities." [Id. at 5 ¶¶ 3-4].

The indictment further sets forth that Berry, Cain, Jinks, and Person A, "aided and abetted" by Melvin, "carried out the scheme and artifice to defraud by misappropriating Inside Information of Chattem's, knowing that it had been disclosed by Melvin . . . so that [they] could execute and cause the execution of securities transactions on the basis of the Inside Information." [Id. at 5 ¶ 5]. Finally, the indictment alleges that Berry, Cain, Jinks, and Person A "in turn executed and caused to execute transactions in Chattem's securities on the basis of the Inside Information provided by [Melvin] for their own benefit through personal online brokerage accounts," and that they "sold their Chattem shares after the merger was publicly announced, thereby earning illegal profits." [Id. at 5-6 ¶ 6].

6

## II.  DISCUSSION

**A.  Motions to Sever, [Docs. 40 & 53]**

Pursuant to Rules 8 and 14 of the Federal Rules of Criminal Procedure, both Berry and Cain seek a separate trial from each other and their co-defendants, primarily arguing that they were improperly joined under Rule 8, and that alternatively, even if joinder was proper, they would be unfairly prejudiced under Rule 14 due to the danger of guilt transference or the spill over effect if they were tried together and with their co-defendants.  [Docs. 40 & 53].

"When multiple defendants are indicted, joined offenses must be reviewed initially under the standard set forth under Fed.R.Crim.P. 8(b)."  United States v. Jones, No. CR 109-073, 2009 WL 2920894, at *1 (S.D. Ga. Sept. 11, 2009) (footnote and citation omitted).  "Once Rule 8(b) has been satisfied by the allegations in the indictment, severance is governed entirely by Fed.R.Crim.P. 14, which recognizes that even proper joinder under Rule 8(b) may prejudice a defendant or the government."  Id. at *2 (citing United States v. Lane, 474 U.S. 438, 447 (1986)); see also United States v. Hersh, 297 F.3d 1233, 1241 (11th Cir. 2002).  After consideration of the pleadings, the Court finds that joinder of the defendants in the indictment was proper under Rule 8, and severance is not merited under Rule 14 on the present record.

### 1.      *Joinder is proper under Rule 8*

"Joinder of parties and defendants under Rule 8 is designed to promote judicial economy and efficiency." United States v. Weaver, 905 F.2d 1466, 1476 (11th Cir. 1990). "Rule 8 'is broadly construed in favor of the initial joinder.'" Id. (citation omitted); see also Zafiro v. United States, 506 U.S. 534, 537 (1993) ("There is a preference in the federal system for joint trials of defendants who are indicted together."); Hersh, 297 F.3d at 1241; United States v. Touchet, No. 3:07-cr-90-J-33HTS, 2008 WL 2025322, at *7 (M.D. Fla. May 9, 2008); United States v. Cameron, No. 06-20753-CR, 2007 WL 1696022, at *3 (S.D. Fla. June 12, 2007), adopted at *1 (quoting United States v. Dominguez, 226 F.3d 1235, 1238 (11th Cir. 2000)). Indeed, Rule 8(b) "permits the joinder of [d]efendants in the same indictment if they are alleged to have participated in the same act or transaction, and the general rule is that [d]efendants indicted together should be tried together[.]" United States v. Chavez, 584 F.3d 1354, 1359-60 (11th Cir. 2009) (citations and internal marks omitted).

Rule 8(b) provides that an "indictment . . . may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). It further provides that the "defendants may be charged in one or more counts

together or separately," but that "[a]ll defendants need not be charged in each count." Id.; see also United States v. Parnell, No. 1:13–CR–12 (WLS), 2014 WL 1653397, at *1 (M.D. Ga. Apr. 24, 2014). "This language requires careful analysis of the relationship among the charged offenses, and it bars the imposition of a blanket rule that the indictment must contain either a conspiracy count or the allegation of a single unified scheme as to each type of offense charged." United States v. Grey Bear, 863 F.2d 572, 585 (8th Cir. 1988) (per curiam).

"[I]n order to establish that the [codefendants] have engaged in the 'same series of acts or transactions' under Rule 8(b) the government must demonstrate that the acts alleged are united by some substantial identity of facts and/or participants." United States v. Morales, 868 F.2d 1562, 1569 (11th Cir. 1989) (footnote and citations omitted). "Where the defendants' acts are part of a series of acts or transactions, it is not necessary that each defendant be charged in each count, nor to show that each defendant participated in every act or transaction in the series." United States v. Gee, Criminal No. 3:07cr211, 2009 WL 412964, at *4 (W.D.N.C. Feb. 18, 2009) (citation and internal marks omitted). "Although Rule 8(b) does not require that each defendant be charged with each act in the series, there must be a logical relationship between each of the defendants joined." Souffrant, 517 F. App'x at 811 (citation omitted).

Defendants argue that joinder under Rule 8(b) is improper in this case, <u>see</u> [Docs. 40 & 53];[7] however, the Court finds that the defendants and the charged offenses are properly joined because they involve the same series of acts or transactions pursuant to a single common scheme to illegally profit from the trade of Chattem stock based on insider information obtained from Melvin.[8]  Despite defendants' attempt to distinguish the cases cited by the government in its response in opposition to the motions to sever, <u>see</u> [Docs. 76 & 81],[9] the Court finds the

---

[7] Specifically, Cain argues that he is entitled to a severance from Melvin, Berry, and Jinks because the government "has no evidence that [he] aided and abetted, no less knew about [Person A], Jinks and Berry's individual purchases of Chattem stock," and because the indictment "charges different substantive counts each with different membership and different times and different factual allegations," thereby rendering joinder under Rule 8(b) improper.  [Doc. 40 at 4, 6-8, 10].  Berry also argues that he should be severed from Cain and Jinks because the charges asserted against him do not arise from the same act or transaction or the same series of acts or transactions.  [Doc. 53 at 4].  In particular, Berry asserts that there is "no substantial identity of facts and participants, no allegation that [he], [] Cain, and [] Jinks were aware of the others alleged unlawful conduct, no common scheme, and certainly no conspiracy," and that the three of them are simply "alleged to have received inside information from the same source, [] Melvin, beyond that, there is no unifying fact or participant," and "[t]here is certainly no suggestion that they received that information as part of a single transaction or the same series of transactions, much less that they in any way acted together, consulted one another, or otherwise conspired in how to use that information."  [<u>Id.</u> at 7].

[8] A "scheme is to a large extent defined by its purpose, and the existence of a common purpose suggests a common scheme."  <u>United States v. Reinhold</u>, 994 F. Supp. 194, 198 (S.D.N.Y. 1998).

[9] Cain attempts to distinguish most of the cases cited by the government by pointing out that those cases involved a conspiracy charge, whereas in the instant

following cases, although not binding, particularly instructive given the facts before the Court.

In <u>United States v. Shoemaker</u>, Criminal No. 2:11–CR–00038–NBB–DAS, 2012 WL 256520, at *2-4 (N.D. Miss. Jan. 27, 2012), the twelve-count indictment charged three defendants with criminal acts involving two separate schemes to illegally profit from their association with a hospital. In particular, counts one through seven in the indictment alleged a nursing services kickback scheme from March, 2005, through July, 2007, involving defendants Shoemaker and Garner, with Garner being charged in only four of those counts. <u>Id.</u> at *1. Counts eight through twelve alleged a scheme from November, 2005, through April, 2006, to make false statements in order to obtain a $4 million dollar line of credit, involving defendants Shoemaker and Corkern, and Shoemaker was also charged in Count twelve with embezzlement of funds from the hospital. <u>Id.</u> Defendant Garner moved to sever the counts asserted against him and Shoemaker for the nursing services kickback scheme from the counts against Shoemaker and Corkern, alleging a scheme involving a line of credit, arguing that the indictment improperly charged them together when they did

---

indictment, there is no conspiracy count. <u>See</u> [Doc. 81 at 13-17]. However, "the government need not allege a conspiracy in order to join defendants or counts." <u>United States v. McRae</u>, 702 F.3d 806, 821 (5th Cir. 2012) (citation and internal marks omitted). "Instead, [w]hat is required is a series of acts unified by some substantial identity of facts or participants." <u>Id.</u> (alteration in original) (citations and internal marks omitted).

not participate in the same act or transaction or in the same series of acts or transactions under Rule 8(b).[10] Id. at *2.

Similar to its argument here, the government in Shoemaker opposed the motion to sever and argued that the indictment involved a common scheme or plan to embezzle, steal, or otherwise illegally profit from their association with the hospital, with the central figure being defendant Shoemaker, but with multiple defendants and witnesses common to each count. Id. In accepting the government's argument and denying Garner's motion to sever, the district court summarized the existing law that "defendants are to be tried together if their indictments arose out of a common set of circumstances, even if there is a disparity in the quantum of evidence," and that "[s]eparate conspiracies with different memberships may still be joined if they are part of the same series of acts or transactions." Id. at *3 (citations and internal marks omitted). The court explained that the term "transaction" as used in Rule 8(b) "is a word of flexible meaning" in that it "may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." Id. (citations and internal marks omitted); see also United States v. Wright, Criminal No.

---

[10] Defendant Corkern subsequently entered a guilty plea and was expected to be called as a government witness in relation to the charges against both Shoemaker and Garner. Shoemaker, 2012 WL 256520, at *2.

11–0262–WS, 2012 WL 1365451, at *3 (S.D. Ala. Apr. 19, 2012).  And, while the court also noted that "defendants charged with two separate albeit similar conspiracies having one common participant are not, without more, properly joined," Shoemaker, 2012 WL 256520, at *3 (citations and internal marks omitted), it found that not only was there one common participant, Shoemaker, but that the two alleged schemes and related underlying substantive charges "also [had] an alleged common objective, to illegally profit from [the hospital]," id. at *4.  Indeed, the district court concluded that these schemes were "substantially interrelated by facts because they involve[d] the same hospital, they overlap[ped] in time, and Shoemaker [was] an alleged participant in both."  Id. (footnote omitted).

Likewise, with respect to the charges in the instant indictment, not only is there a common objective, but there is a common scheme, overlapping in time, to illegally profit from the purchase and subsequent sale of Chattem stock based on inside information provided by Melvin, the common participant in all substantive counts charged in the indictment.  See [Doc. 1].  And, while defendants are not charged in each of the counts, "[w]here the defendants' acts are part of a series of acts or transactions, it is not necessary that each defendant be charged in each count, nor to show that each defendant participated in every act or transaction in the series."  Gee, 2009 WL 412964, at *4 (citation and internal marks omitted).  "In this

context, [the court] [] appl[ies] a commonsense rule to decide whether, in light of the factual overlap among charges, joint proceedings would produce sufficient efficiencies such that joinder is proper notwithstanding the possibility of prejudice to either or both of the defendants resulting from the joinder." United States v. Rittweger, 524 F.3d 171, 177 (2nd Cir. 2008) (citations and internal marks omitted).

In the present case, the series of acts and transactions involved the buying and selling of Chattem stock for an illegal profit based on inside information provided by Melvin to each of the defendants on the same day, such that each transaction had the same ultimate goal. Id. at *5. Indeed, the indictment discloses a scheme to defraud a single victim over a discrete period of time– December 4, 2009, to January 14, 2009, and all of the transactions involved a basic scheme to illegally profit off of the trading of Chattem stock. United States v. Dennis, 645 F.2d 517, 520-21 (5th Cir. 1981),[11] overruled on other grounds, Lane, 474 U.S. at 438.

Berry relies on United States v. Velasquez, 772 F.2d 1348 (7th Cir. 1985), to argue that "Rule 8 does not permit the government to charge multiple defendants in one indictment for committing offenses of a similar character." [Doc. 53 at 5, 7 (citation omitted)]; see also [Doc. 76 at 4-5]. In Velasquez, the government charged

---

[11] Decisions of the Fifth Circuit rendered before October 1, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

five defendants with trafficking in cocaine.  One of the defendants, however, was also charged with heroin distribution in a completely unrelated scheme, and the Seventh Circuit therefore found that joinder was improper as to that one count. Velasquez, 772 F.2d at 1353.  As the government points out, see [Doc. 63 at 18-19], unlike Velasquez, the offenses charged in the instant indictment are the same, and are connected with a common scheme or plan, see United States v. Lock, No. 07-Cr-204, 2008 WL 906141, at *3-4 (E.D. Wis. Mar. 31, 2008); see also United States v. White, 737 F. 3d 1121, 1132-33 (7th Cir. 2013), and the "test is what the indictment charges, not what the evidence shows," United States v. Marzano, 160 F.3d 399, 401 (7th Cir. 1998) (citations omitted).  That is, "members of two or more conspiracies may be joined as defendants even where the members have not been charged as participating in one overarching conspiracy."  Rittweger, 524 F.3d at 178 (citation omitted).

Here, although defendants, both of whom have been accused of trading on inside information provided by Melvin during the same time frame and with regard to the same stock, were not charged in one overarching insider trading conspiracy, they are properly joined under Rule 8(b), since the indictment alleges "a common plan with a substantial overlap of participants and facts."  United States v. Rajaratnam, 753 F. Supp. 2d 299, 310 (S.D.N.Y. 2010); see also United States v. Feyrer,

15

333 F.3d 110, 114 (2nd Cir. 2003) (finding joinder proper under Rule 8(b) because the charges were united by overlapping facts and participants and a common plan with schemes that ran at the same time despite defendant's argument that he and co-defendant were accused of two separate and distinct conspiracies that did not involve a common object and were neither factually nor temporally related, that they were not charged in the conspiracy counts of the other, and that the only defendant charged with participating in both conspiracies pled guilty prior to trial).[12]

---

[12] Both defendants also rely on United States v. Satterfield, 548 F.2d 1341, 1345 (9th Cir. 1977), in support of their contention that they were misjoined. See [Doc. 40 at 5, 8-9; Doc. 53 at 6; Doc. 81 at 6-7]. In Satterfield, the government charged two defendants in a ten-count indictment relating to five bank robberies. 548 F.2d at 1343. In particular, one of the defendants was singly charged with perpetrating three of the robberies and both of the defendants were charged with having committed two unrelated robberies, and "it was never alleged that Satterfield was involved in the first, second, and fifth robberies, whether as a participant in a common plan or in any other manner." Id. The Ninth Circuit found that joinder was improper since "a nexus between each offense charged in the indictment was absent," thereby rendering the court unable to conclude that the "five robberies each arose out of the same series of acts or transactions." Id. at 1345. The instant case, however, is unlike Satterfield, since the indictment here charges a series of acts or transactions with facts and participants common to all defendants and is therefore more analogous to Rittweger, Feyrer, and Shoemaker. Moreover, to the extent defendants assert that this case is similar to Kotteakos v. United States, 328 U.S. 750 (1946), and United States v. Marcus Schloss & Co., 710 F. Supp. 944, 951 (S.D.N.Y. 1989), in that it is like a "wheel conspiracy" where the center of the wheel is the tipper and the tippees are the spokes connected with each other only through the center, with no allegations that each "spoke" participated in the same alleged acts, any such assertion is misplaced since the government "does not allege a conspiracy in which disparate and unconnected 'spokes' used a single hub to further their own individual interests," but rather, "it alleges that the defendants acted with [a] common purpose [to illegally profit from the inside trading of Chattem stock]," and

Furthermore, defendants' arguments in their motions to sever are similar to those raised and rejected in a parallel civil case brought by the SEC arising out of the same underlying facts presented in the indictment.  See SEC v. Melvin, Civil Action No.  1:12-cv-02984-CAP, at [Docs. 96 & 128] (N.D. Ga. 2014).  In that case, the Honorable Charles A. Pannell, Jr., Senior United States District Judge for the Northern District of Georgia, denied Cain's motion to sever based on nearly identical arguments as those presented here, finding in relevant part:

> The right to relief asserted by the SEC against the defendants arises out of an alleged insider-trading scheme initiated by Melvin.  While Cain, Doffing, and Jinks are alleged to have committed separate illegal acts as a result of the material nonpublic information from Melvin, the separate acts remain a part of the same series of transactions or occurrences.

See id., at [Doc. 96 at 17] (N.D. Ga. Feb. 19, 2014).  Subsequently, Judge Pannell addressed the severance issue on a second motion to sever filed by Cain, setting forth "the same fundamental arguments," and Judge Pannell found that the

---

"[t]hese allegations are sufficient to support joinder of the defendants." Reinhold, 994 F. Supp. at 198; see also United States v. Attanasio, 870 F.2d 809, 815 (2d Cir. 1989).  Indeed, "[i]t is the presence of a common plan or scheme, a common aim or goal, not whether each defendant knows of the acts or roles of each other, or of others, that controls." Reinhold, 994 F. Supp. at 199-200.  "Although courts have, on occasion, referred to the parties' knowledge or lack thereof, . . . it is the participation in the same acts or transactions, or series of acts or transactions, in a common scheme or plan, that is, with a common purpose, that will determine the propriety of joinder of offenses and parties," id. at 200, and here, based on the allegations in the indictment, the Court finds that joinder was proper under Rule 8(b).

"substantial overlap of factual and legal issues in th[e] case easily satisfie[d] the liberally construed rule for permissive joinder."  Id., at [Doc. 128 at 2, 5 (citations omitted)] (N.D. Ga. Nov. 21, 2014).  Although Judge Pannell analyzed the severance issue under Rule 20(a) of the Federal Rules of Civil Procedure,[13] the term "transaction" carries the same flexible meaning as in the criminal context in that "[i]t may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship."  Nettles v. Daphne Utils., Civil Action No. 13–0605–WS–C, 2014 WL 1668535, at *2 n.1 (S.D. Ala. Apr. 28, 2014) (citation and internal marks omitted); see also Voltage Pictures, LLC v. Does 1-31, 291 F.R.D. 690, 694-95 (S.D. Ga. 2013).  The Court finds Judge Pannell's analysis of the severance issues in the parallel civil action brought by the Securities and Exchange Commission to be persuasive and equally applicable to the facts alleged in the indictment here.  Accordingly, joinder under Rule 8(b) was proper. See United States v. Staph, Criminal No. 09–42, 2010 WL 2884694, at *6-7 (W.D. Pa. July 21, 2010).

---

[13] Rule 20(a) provides that individuals "may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2)(A)-(B).

## 2.    *Severance is not warranted under Rule 14*

Although joinder is appropriate under Rule 8, the Court still has discretion under Rule 14(a) of the Federal Rules of Criminal Procedure to sever the offenses and order separate trials if it appears that consolidation of the charges would prejudice defendants. Fed. R. Crim. P. 14(a); United States v. Kopituk, 690 F.2d 1289, 1314-15 (11th Cir. 1982).   "In deciding a motion for severance, the Court must balance the right of a defendant to a fair trial against the public's interest in efficient and economic administration of justice."   United States v. Denmark, No. 205CR71FTM33DNF, 2005 WL 2755987, at *2 (M.D. Fla. Oct. 25, 2005) (citation and internal marks omitted).   "More specifically, the Eleventh Circuit has interpreted Rule 14 to require a [d]efendant seeking severance to demonstrate specific and compelling prejudice arising from a joint trial."   Id. (citing United States v. Leavitt, 878 F.2d 1329, 1340 (11th Cir. 1989)).   Defendants have not done so here.

As a basis for severance, Cain argues that the "crimes with which the other defendants are charged, and the facts placed in the Introduction and Scheme sections of the Indictment, would lead a jury to inevitably and improperly believe that all defendants were 'bad people' and involved in insider trading," and that "the government drafted the Indictment with the 'birds of a feather' theory in mind."

[Doc. 40 at 12].[14]  Cain further argues that the evidence involving Person A, Berry, and Jinks and those allegations against Melvin, "which do not involve [him] would not be admitted if [he] were tried separately."  Id. at 13].  Similarly, Berry asserts that "[t]rying the charges against [him] alongside the charges against [] Cain and [] Jinks, without any grounds for alleging a conspiracy, unfairly links the alleged conduct, suggesting, without proving, concert."  [Doc. 53 at 8]; see also [Doc. 76 at 6].

While a defendant "can show compelling prejudice by demonstrating that the jury would not be able to separate the evidence relevant to each count, . . . instructions to the jury which require the jury to consider the evidence separately as to each . . . count have been held to be adequate safeguards against prejudice due to joinder."  Denmark, 2005 WL 2755987, at *2-3 (citation omitted) (citing Kopituk, 690 F.2d at 1320); see also United States v. Baradji, 479 F. App'x 301, 303 (11th Cir. 2012) (per curiam) (unpublished) (citation and internal marks omitted) ("[E]ven in the case of prejudicial spillover, a court's cautionary instructions will ordinarily mitigate the potential spillover effect of evidence of a codefendant's guilt.").

---

[14]Specifically, Cain asserts that "[h]aving no direct evidence against [him], the government is attempting to use the facts that the defendants all live in Griffin and Melvin was their accountant and they all bought Chattem stock to prejudice [him] with improper and highly prejudicial innuendo that he must have been involved in the alleged insider trading of Chattem stock."  [Doc. 40 at 12 n.5 (citation omitted)].

Moreover, "severance is not required if some evidence is admissible against some defendants and not others and a defendant is not entitled to severance because the proof is greater against a co-defendant." United States v. Jones, No. 1:06-CR-140, 2007 WL 712420, at *4 (E.D. Tenn. Mar. 6, 2007) (citations and internal marks omitted); see also United States v. Locascio, 6 F.3d 924, 947 (2d Cir. 1993) (citations omitted) ("[J]oint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible."). And, while defendants argue that evidence of each of their Chattem trades would not be admissible in a separate trial from each other and their co-defendants, see [Doc. 76 at 6, Doc. 81 at 16], the Court finds the arguments made by the government in this regard persuasive, see [Doc. 63 at 22-25].

In particular, the government cites United States v. Ballesteros Gutierrez, 181 F. Supp. 2d 350 (S.D.N.Y. 2002), for support of its argument that "in an insider trading case, parallel trading patterns are relevant and admissible to prove that a defendant traded on information that the defendant knew was illegally obtained." [Doc. 63 at 22]. In Ballesteros Gutierrez, the defendant was charged with insider trading in connection with a scheme in which the defendant, his brothers, and his uncle executed trades of Nalco Chemical Company stock based on inside information provided by the defendant's father, who was a director and member of

21

the audit committee of Nalco.  181 F. Supp. 2d at 351-53.  The defendant moved to

preclude evidence of the securities trades of his brothers, his uncle, and one of his

brother's friends under Federal Rules of Evidence 401 and 403,[15] on the ground that

it would constitute "an effort to establish defendant's guilt by association."  Id. at

353-54.  The district court denied the motion, observing in relevant part:

> The size of the [stock] purchases, their temporal proximity to [the
> father's] receipt of the nonpublic information, the use by the three
> brothers of defendant's broker with whom they did not previously
> have accounts, and the prompt sales are more consistent with the
> sharing of the inside information to enable the family members to turn
> a quick profit with little or no risk than with investment decisions
> independently arrived at on the basis of public information.  And while
> defendant's failure to sell promptly after the public announcement
> undermines this inference in his case, it does so in degree only.   In
> consequence, the evidence concerning the trading pattern plainly is
> relevant.

Id. (footnotes omitted).  In addition, the district court addressed Federal Rule of

Evidence 403, and after distinguishing certain cases relied on by defendants here,

it concluded that the "evidence [was] highly probative of a common scheme to trade

on inside information" and found the trades of defendant's family members and one

---

[15] Rule 401 of the Federal Rules of Evidence provides that evidence is relevant
if "it has any tendency to make a fact more or less probable than it would be without
the evidence," and "the fact is of consequence in determining the action."  Fed. R.
Evid. 401.  Rule 403 provides that the court "may exclude relevant evidence if its
probative value is substantially outweighed by a danger of one or more of the
following: unfair prejudice, confusing the issues, misleading the jury, undue delay,
wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

of his family member's friends admissible at trial.  Id. at 353-56; see also United States v. Pileggi, No. 97–CR–612–2, 1998 WL 288283, at *2 (E.D. Pa. June 3, 1998) (footnote omitted) (finding that evidence that defendant's relatives traded security at issue was admissible because "the suspicious pattern and timing of the trades by defendant's blood relatives permits a reasonable inference to be drawn that defendant possessed inside information").

Despite defendants' attempts to distinguish Ballesteros Gutierrez, see [Doc. 76 at 6-7; Doc. 81 at 16-17], the same analysis applies in this case.  Indeed, while defendants attempt to distinguish Ballesteros Gutierrez, by arguing that it was based on a broader conspiracy than the present case, and because it involved a family relationship among the defendant and the other tippees, see [Doc. 76 at 6-7; Doc. 81 at 16-17], the Second Circuit addressed these issues in a similar case where there was no allegation that the defendant and the other tippees were co-conspirators, but rather, the other tippees were strangers to the defendant, and found that the admission of the other trades was nevertheless appropriate under Rule 403.  See United States v. Contorinis, 692 F.3d 136, 144-45 (2d Cir. 2012).  Here, the evidence is relevant to establish that defendants executed trades of Chattem stock based on the same source of information as the other tippees, and the parallels between each of their trading, including the temporal proximity, is probative of whether

defendants, like the other tippees, executed the trades based on Melvin's inside information, and the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice. See S.E.C. v. Warde, 151 F.3d 42, 48 (2d Cir. 1998) (finding parallel trading of tipper and tippee supported inference that tippee was trading based on tipper's inside information). "It is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials," Harrison v. United States, 577 F. App'x 911, 914 (11th Cir. 2014) (per curiam) (unpublished) (citation and internal marks omitted), and this case "simply is not one where the risk that the jury will not, or cannot, follow instructions is so great that it outweighs the interest in judicial economy served by a joint trial," Shoemaker, 2012 WL 256520, at *5. Accordingly, the Court finds that defendants have failed to establish compelling prejudice such that the Court should exercise its discretion and sever their trial from each other and the trial of their co-defendants.

**B.**   **Motions to Strike Surplusage, [Docs. 42, 54, & 56-1]**

Berry, Cain, and Jinks also move to strike as surplusage from the indictment certain paragraphs and counts pertaining to their co-defendants on the basis that these allegations are either not supported by the evidence or do not pertain to them and are, therefore, irrelevant and highly prejudicial.   [Docs. 42, 54, & 56].

Specifically, Berry "seeks to strike those portions of the Indictment containing the allegations against [] Cain and [] Jinks and the facts supporting those allegations." [Doc. 54 at 1].  Cain seeks to strike paragraphs 1 and 5, which allege that the defendants aided and abetted each other,[16] paragraph 2 h, i, k, and l, which pertain to Berry and Jinks and describe Melvin's relationship to them, and paragraphs 6, 7, and 8, which describe the execution of the scheme and transactions made by each defendant and Person A after Melvin allegedly provided them inside information, as well as Counts One, Two, and Seven, which do not charge Cain.  [Doc. 42 at 2]. Jinks, who has moved to adopt and conform Cain's motion to strike surplusage, moves to strike the  same paragraphs as Cain and Counts One through Six, which do not charge Jinks.  [Doc. 56 at 2].

Federal Rule of Criminal Procedure 7(d) grants the Court the authority to strike surplusage from an indictment upon a motion by the defendant.  Fed. R. Crim. P. 7(d).  "A motion to strike surplusage from an indictment should not be granted

---

[16] Cain contends that the evidence does not support the aiding and abetting allegations of paragraphs 1 and 5.  [Doc. 42 at 1-2].  However, "[t]here is no summary judgment procedure in criminal cases," and the Federal Rules of Criminal Procedure do not "provide for a pre-trial determination of sufficiency of the evidence."  United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992).  Moreover, as noted earlier, the Court has ordered the government to file a bill of particulars with respect to the aiding and abetting allegations of the indictment, and for purposes of considering the motions to strike surplusage, the Court has accepted the government's representation in its consolidated response to the defendants' motions for a bill of particulars regarding the scope of the aiding and abetting allegations.

'unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial. . . . [T]his is a most exacting standard.'" <u>United States v. Awan</u>, 966 F.2d 1415, 1426 (11th Cir. 1992) (alteration in original) (citation and internal marks omitted) (<u>quoting</u> <u>United States v. Huppert</u>, 917 F.2d 507, 511 (11th Cir. 1990), <u>superseded by statute on other grounds as recognized in</u> <u>United States v. McQueen</u>, 86 F.3d 180, 183 (11th Cir. 1996)).

The motions to strike surplusage are premised on Berry and Cain's arguments that they have been improperly joined with their co-defendants and should be severed for trial.[17]  Indeed, Berry argues that "[p]ost-severance, allegations, and facts supporting those allegations, against [] Cain and [] Jinks are irrelevant to the charges against [] Berry." [Doc. 54 at 5].  However, since it is recommended that the motions for severance be denied, it is likewise **RECOMMENDED** that the motions to strike surplusage, [Docs. 42, 54, & 56-1], be **DENIED** because, absent severance, the portions of the indictment defendants seek to strike are not surplusage.

### III.  CONCLUSION

For the foregoing reasons and cited authority, it is **RECOMMENDED** that the motions to sever, [Docs. 40 & 53],  and the motions to strike surplusage, [Docs. 42, 54, & 56-1], be **DENIED**.  Cain's motion for a speedy trial, [Doc. 43], and motion for

---

[17] Jinks has not moved for severance and he has not offered any independent reasons to strike the alleged surplusage.  <u>See</u> [Doc. 56].

expedited trial date, [Doc. 88], which are premised on his motion to sever, are

**DEFERRED** to the district judge.

  **IT IS SO RECOMMENDED**, this 7th day of April, 2015.

              RUSSELL G. VINEYARD
             UNITED STATES MAGISTRATE JUDGE